UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OSSIE LEE SLAUGHTER,

           Plaintiff,

v.

DAN WHITE, *et al.*,

           Defendants.

Case No. C16-1067-RSM-JPD

REPORT AND RECOMMENDATION

### INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Ossie Slaughter alleges in this action that his federal constitutional rights were violated during a period of confinement at the Monroe Correctional Complex (MCC) - Special Offender Unit (SOU) in early 2016. (*See* Dkt. 82.) There are five defendants remaining in this action, and plaintiff's claims against those individuals are set forth in plaintiff's more definite statement/third amended complaint.[1] (*See id.*) Three of the remaining five defendants, Brittany West, Mark Jones, and

---

[1] Plaintiff identified thirty-three defendants in his second amended complaint, and twenty-eight of those defendants were dismissed prior to service of that pleading. (*See* Dkts. 44, 47.) Following service of the second amended complaint, the five remaining defendants moved for a more definite statement, and the Court granted that

REPORT AND RECOMMENDATION
PAGE - 1

Sheryl Albert, now move for summary judgment for failure of plaintiff to exhaust his administrative remedies. (Dkt. 84.) The Court, having reviewed defendants' motion, plaintiff's response thereto, and the balance of the record, concludes that defendants' motion for summary judgment should be granted and that plaintiff's third amended complaint, and this action, should be dismissed with prejudice as to defendants West, Jones, and Albert.

## DISCUSSION

Plaintiff alleges in his third amended complaint that defendant Brittany West, a Mental Health Counselor at MCC-SOU, wrote false witness statements in support of a wrongful infraction in retaliation for plaintiff filing grievances against Ms. West and her co-workers. (Dkt. 82, ¶ 49.) Plaintiff further alleges that defendant Mark Jones, a Correctional Officer at MCC-SOU, placed plaintiff in an unsanitary cell and then refused to move him out of that cell, despite his repeated complaints about the condition of the cell, in retaliation for plaintiff filing grievances against Mr. Jones and his co-workers. (*Id*., ¶ 51.) Finally, plaintiff alleges that defendant Sheryl Albert, a Physician Assistant at MCC-SOU, denied plaintiff medical care for various infections acquired at the facility in retaliation for plaintiff filing grievances against other MCC employees. (*Id*., ¶ 52.) Defendants argue in their motion for summary judgment that plaintiff failed to fully exhaust his administrative remedies with respect to these allegations, and that these claims should therefore be dismissed. (*See* Dkt. 84.)

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

---

motion. (Dkts. 59, 62.) Plaintiff's more definite statement, filed on April 1, 2018, is construed as a third amended complaint and will henceforth be referred to as such. (*See* Dkt. 82.)

REPORT AND RECOMMENDATION
PAGE - 2

administrative remedies as are available are exhausted." Section 1997e(a) requires *complete* exhaustion through any available process. *See Porter v. Nussle* 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 735 (2001). Section 1997e(a) also requires *proper* exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper" exhaustion means full compliance by a prisoner with all procedural requirements of an institution's grievance process. *See id*. at 93-95. If administrative remedies have not been exhausted at the time an action is brought, the action must be dismissed without prejudice. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002)(per curiam).

Failure to exhaust administrative remedies is an affirmative defense which a defendant must plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). A defendant must produce evidence demonstrating that there was an available administrative remedy and that the prisoner did not exhaust that remedy. *Id*. at 1172. The burden then shifts to the prisoner who must show that there is something in his case that made the existing remedies effectively unavailable to him. *Id*. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment. *Id*. at 1166.

The Washington Department of Corrections ("DOC") has established an Offender Grievance Program ("OGP") through which offenders may seek review of various aspects of their incarceration. (*See* Dkt. 85, ¶ 4.) For example, the OGP permits an offender to grieve: 1) DOC policies, rules, and procedures; 2) the application or lack of application of such policies, rules, and procedures; 3) the lack of policies, rules, or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other

REPORT AND RECOMMENDATION
PAGE - 3

offenders; 6) retaliation against the offender for his good faith participation in the grievance program; 7) personal safety; and 8) physical plant conditions. (*See id*.; Dkt. 85-1 at 10.)

The grievance procedure has four levels of review. (Dkt. 85, ¶ 6.) The initial level, Level 0, is the complaint or informal level. (*Id*.) At this level, the grievance coordinator receives a written complaint from an offender which identifies an issue with respect to which the offender wishes to pursue a formal grievance. (*Id*.) The grievance coordinator either pursues informal resolution, returns the complaint to the offender for rewriting or for additional information, or accepts the complaint and processes it as a formal grievance. (*Id*.)

At the first step of the formal grievance process, Level I, an offender's grievance is reviewed, and responded to, by the institution's grievance coordinator. (*See id*.) An offender who is dissatisfied with the response received from the grievance coordinator may appeal that decision to the superintendent of the institution. (*See id*.) This is known as Level II. (*Id*.) All staff conduct grievances are initiated at this level. (Dkt. 85, ¶ 6.) An offender who is dissatisfied with the response received from the superintendent may appeal that decision to DOC headquarters where the grievances are reviewed. (*Id*.) This is known as Level III.

The OGP requires that grievances be filed within 20 working days of the incident that gives rise to the grievance. (*Id*.) Offenders have five working days from the time they receive a response to a Level I and Level II grievance to file an appeal. (*Id*.) An offender cannot appeal a Level III decision. (*See id*.)

Dale Caldwell, the Grievance Program Manager for the DOC, has submitted a declaration in support of defendants' summary judgment motion in which he states that he reviewed plaintiff's grievance records in relation to the allegations made by plaintiff in this action and he

REPORT AND RECOMMENDATION
PAGE - 4

determined that though plaintiff's complaints against defendants West, Jones, and Albert were all grievable under the OGP, plaintiff did not file any grievances related to those complaints. (*See* Dkt. 85, ¶¶ 12-15.)

More specifically, Mr. Caldwell states that plaintiff's grievance records do not indicate that he filed any staff misconduct grievances alleging that defendant West acted inappropriately towards him at times relevant to this action. (*See* Dkt. 85, ¶ 14.) Likewise, Mr. Caldwell states that plaintiff's grievance records do not indicate that he filed any staff misconduct grievances alleging that defendant Jones engaged in retaliatory behavior towards him at times relevant to this action. (*See id.*, ¶ 15.) Finally, Mr. Caldwell states that plaintiff's grievance records do not indicate that he filed any grievances alleging that defendant Albert failed to provide him medical care at times relevant to this action. (*See id.*, ¶ 13.)

Plaintiff asserts in his response to defendants' summary judgment motion that he "filed multiple emergency grievances to no avail." (*See* Dkt. 91 at 3.) Plaintiff further asserts that while housed at the MCC-SOU, and the MCC-Intensive Management Unit ("IMU"), the grievance coordinator "never processed, nor accepted any of Mr. Slaughter's grievances, nor would he process Mr. Slaughter's appeals to his responses to all of those emergency and routine filed grievances." (*Id.* at 4.) Plaintiff claims as well that Mr. Caldwell, whom plaintiff identifies as the supervisor of the MCC grievance coordinator, also failed to process any of his grievances or appeals. (*Id.*)

The Ninth Circuit has recognized that acts by prison officials that prevent the exhaustion of administrative remedies may make administrative remedies effectively unavailable to a prisoner. *See Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010). Similarly, in *Ross v.*

REPORT AND RECOMMENDATION
PAGE - 5

*Blake*, 136 S. Ct. 1850, 1859 (2016), the United States Supreme Court held that § 1997e(a) requires an inmate to exhaust only those grievance procedures "that are capable of use to obtain some relief for the action complained of." *Id*. (citation and internal quotation marks omitted). The Supreme Court went on to note three circumstances in which an administrative remedy, although officially available, is not capable of use to obtain relief: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

Plaintiff submitted in support of his third amended complaint a number of exhibits which confirm that he had a number of emergency grievances rejected because they did not meet the criteria for emergency grievances, and that he had a number of routine grievances administratively withdrawn because he already had the maximum number of allowable complaints pending at the time the grievances were filed or because he otherwise failed to comply with directives of the grievance coordinator. (*See* Dkt. 82-2 at 60-69; 82-3; 82-4.) Plaintiff's submissions do not support his assertion that none of his grievances were ever accepted or processed at the MCC-SOU or IMU. Indeed, the record makes clear that it was often the fact that plaintiff frequently had too many open grievances pending review that caused others to be rejected. Plaintiff's submissions do not demonstrate that prison officials improperly thwarted his efforts to access the OGP or that they otherwise rendered grievance procedures

REPORT AND RECOMMENDATION
PAGE - 6

unavailable to him. Rather, plaintiff's submissions indicate that it was his own inability to comply with the requirements of the OGP that occasionally precluded him from pursing desired grievances.

Defendants have produced evidence demonstrating that there were available administrative remedies and that plaintiff did not exhaust those remedies with respect to the claims asserted in this action against defendants West, Jones and Albert. Plaintiff offers no evidence of his own to rebut that presented by defendants. Accordingly, plaintiff's third amended complaint and this action must be dismissed, under 42 U.S.C. § 1997e(a), for failure to exhaust administrative remedies as to the claims asserted against these defendants. And, because the time for filing any such grievances pertaining to defendants' actions in 2016 has long since expired, the dismissal should be with prejudice.

## CONCLUSION

Based on the foregoing, this Court recommends that defendants' motion for summary judgment be granted and that plaintiff's third amended complaint, and this action, be dismissed with prejudice as to defendants West, Jones and Albert. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **September 4, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no

1  timely objections are filed, the matter will be ready for consideration by the District Judge on

2  **September 8, 2018.**

3        This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

4  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

5  assigned District Judge acts on this Report and Recommendation.

6        DATED this <u>14th</u> day of August, 2018.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 8