1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8    OSSIE LEE SLAUGHTER,

9                              Plaintiff,              Case No. C16-1067-RSM-JPD

10              v.

11    DAN WHITE, *et al.*,                             REPORT AND RECOMMENDATION

12                              Defendants.

13

14              INTRODUCTION AND SUMMARY CONCLUSION

15         This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff Ossie Slaughter

16    alleges in this action that his federal constitutional rights were violated during a period of

17    confinement at the Monroe Correctional Complex (MCC) - Special Offender Unit (SOU) in

18    early 2016.  (*See* Dkt. 82.)   There are two defendants remaining in this action, Correctional

19    Officer Lance Rogers and Disciplinary Hearing Officer Steve Ewing, and plaintiff's claims

20    against those individuals are set forth in plaintiff's more definite statement/third amended

21    complaint.[1]  (*See id*.)  Defendants Rogers and Ewing now move for summary judgment.  (Dkt.

22

23         [1] Plaintiff identified thirty-three defendants in his second amended complaint, and twenty-eight of those
      defendants were dismissed prior to service of that pleading.  (*See* Dkts. 44, 47.)  Following service of the second

REPORT AND RECOMMENDATION - 1

103.)  Plaintiff opposes defendants' motion.  (Dkt. 111.)  The Court, having reviewed

defendants' motion, plaintiff's response thereto, and the balance of the record, concludes that

defendants' motion for summary judgment should be granted, and that plaintiff's third amended

complaint and this action should be dismissed, with prejudice, as to defendants Rogers and

Ewing.

BACKGROUND

Plaintiff alleges that Correctional Officer (C/O) Lance Rogers and Disciplinary Hearing

Officer (DHO) Steve Ewing retaliated against him based on his good faith participation in the

prison grievance system.  (*See* Dkt. 82.)  More specifically, plaintiff alleges that C/O Rogers

would subject him to pat-searches every time he went to the dining hall simply because he had

previously filed grievances against C/O Rogers and his co-workers.  (Dkt. 82 at 7.)  Plaintiff

claims that during one such search on May 9, 2016, C/O Rogers found an ink-pen on plaintiff's

person and gave plaintiff an "ultimatum" to dispose of the pen or receive an infraction.  (*Id*. at 8-

9.)  Plaintiff "allowed" C/O Rogers to dispose of the pen in an effort to avoid an infraction.  (*Id*.

at 9.)  Plaintiff alleges that C/O Rogers thereafter issued a retaliatory infraction against him in

which C/O Rogers claimed that plaintiff had "intimidated and used physical force on him"

during their interaction on May 9, 2016.  (*Id*. at 10, 15-16.)

Plaintiff also alleges that DHO Ewing retaliated against him on May 12, 2016 when he

found plaintiff guilty of the infraction written by C/O Rogers.  (*Id*. at 16-17.)  Plaintiff asserts as

well that DHO Ewing violated his procedural due process rights during the disciplinary hearing

---

amended complaint, the five remaining defendants moved for a more definite statement, and the Court granted that
motion.  (Dkts. 59, 62.)  Plaintiff's more definite statement, filed on April 1, 2018, is construed as a third amended
complaint and will henceforth be referred to as such.  (*See* Dkt. 82.)

REPORT AND RECOMMENDATION - 2

1   when he denied plaintiff exculpatory evidence in the form of video footage of the incident which

2   gave rise to the infraction.  (Dkt. 82 at 17.)

3          At times relevant to this complaint, C/O Rogers was a Response and Movement Officer

4   at the MCC.  (Dkt. 105, ¶ 2.)  In that role, he was responsible for the security of the entire inner

5   and outer perimeter of the institution.  (*Id*., ¶ 3.)  He was also tasked with conducting frequent

6   searches of all areas and inmates within his zone of control.  (*Id*.)  While monitoring inmate

7   movement to and from activities, including meals, recreation, and medication lines, C/O Rogers

8   was expected to conduct searches of inmates and the areas they were in, as well as to respond to

9   incidents as part of the Quick Response Strike Team.  (*Id*., ¶ 3.)  According to C/O Rogers, he

10  conducted pat-searches of plaintiff consistent with these assigned duties.  (*Id*., ¶ 7.)

11         On May 3, 2016, plaintiff filed a grievance alleging that C/O Rogers tried to provoke a

12  verbal altercation with him, and influenced another correctional officer to harass him in the

13  dining room.  (Dkt. 111-2 at 17.)  Plaintiff also complained that C/O Rogers had singled him out

14  for a pat-search and had warned him about bringing an ink-pen into the dining room.  (*Id*.)

15  Plaintiff was subsequently advised by the grievance coordinator that in order for the grievance to

16  be considered he would have to rewrite it, and plaintiff was given specific information about

17  what the rewrite should look like and what information it should include.  (*Id*.)  Nothing in the

18  record shows that plaintiff ever rewrote that grievance.  (*Id*.)  If an inmate chooses not to follow

19  the rewrite instructions provided by the grievance coordinator, the grievance is considered

20  withdrawn.  (Dkt. 104, ¶ 7.)

21         On May 5, 2016, plaintiff filed a grievance alleging that C/O Rogers was targeting him

22  "for racial discrimination and harassment."  (Dkt. 104-2 at 2.)  Though not entirely clear,

23  plaintiff appears to have complained therein that C/O Rogers tried to get another officer to deny

REPORT AND RECOMMENDATION - 3

him access to the gym, and that C/O Rogers later was "meanmugging" him and staring at him in the dining room.  (Dkt. 104-2 at 2.)  Plaintiff also complained that C/O Rogers had singled him out for a pat-search as he was leaving the dining room that day.  (*Id*.)  Once again, plaintiff was advised by the grievance coordinator that in order for the grievance to be considered he would have to rewrite it, and plaintiff was given specific information about what the rewrite should look like and what information it should include.  (*Id*.)  Plaintiff failed to rewrite the grievance and it was therefore administratively withdrawn.  (*Id*.)

On May 6, 2016, plaintiff filed another grievance complaining that C/O Rogers was targeting him "for harassment, reprisal, and discrimination."  (*Id*. at 3.)  Plaintiff once again complained that C/O Rogers had singled him out for a pat-search outside the dining room, and that C/O Rogers later was "meanmugging" him and staring at him in the dayroom.  (*Id*.) Plaintiff was again advised by the grievance coordinator that he would have to rewrite his grievance in order for the grievance to be considered, and plaintiff was again provided specific information about what the rewrite should look like and what information it should include.  (*Id*.) Plaintiff failed to rewrite that grievance as well and it was therefore administratively withdrawn. (*Id*.)

On May 9, 2016, C/O Rogers was responsible for conducting pat-searches of inmates entering the SOU dining hall.  (Dkt. 105, ¶ 7.)  During his search of plaintiff, C/O Rogers found an ink-pen.  (*Id*.)  C/O Rogers had previously warned plaintiff that he could not bring a pen into the dining hall, and he gave plaintiff the option to throw the pen away or receive an infraction for possession of contraband.  (*Id*.)  According to C/O Rogers, plaintiff became verbally aggressive and visibly agitated as he continued to allege that C/O Rogers was harassing him and as he demanded to speak to the Lieutenant.  (*Id*.; Dkt. 106-1 at 2.)  Given plaintiff's aggressive

REPORT AND RECOMMENDATION - 4

behavior, C/O Rogers believed that plaintiff was trying to intimidate him so that he would not continue to conduct the pat-search. (Dkt. 105, ¶ 7; Dkt. 106-1 at 2.) C/O Rogers also had concerns that plaintiff's behavior would continue to escalate if he were not held accountable for his attempted coercion of staff. (*See id*.) C/O Rogers therefore issued plaintiff a serious infraction for using physical force, intimidation, or coercion against a person, a violation of rule number 663. (*Id*.)

On May 10, 2016, C/O Michael Bosc served plaintiff with a disciplinary hearing notice which advised plaintiff of the infraction and the date and time of the hearing. (Dkt. 106-4 at 2.) Plaintiff at that time requested video footage of the incident in question. (*See id*.) C/O Bosc thereafter attempted to obtain the requested video footage, but was unable to do so because of unspecified technical issues. (Dkt. 106-2 at 3.)

On May 12, 2016, DHO Ewing conducted a disciplinary hearing on the charged violation and found plaintiff guilty based on staff documentation that plaintiff attempted to intimidate staff. (*See* Dkt. 106-5; Dkt. 106-6.) The staff documentation included the initial infraction report written by C/O Rogers, and an incident report written by Correctional Mental Health Specialist Brittany West who witnessed the incident which gave rise to the infraction. (*See* Dkt. 106, ¶ 5; Dkt. 106-1; Dkt. 106-2.) Plaintiff was sanctioned to 20 days segregation with 10 days suspended for 365 days, and to 15 hours of extra work duty. (*See id*.)

Following his disciplinary hearing, plaintiff filed a grievance complaining about the manner in which DHO Ewing conducted the hearing. (Dkt. 104-3 at 2.) That grievance was not accepted because plaintiff was over the allowable number of grievances at that time. (*See id*.) Plaintiff filed another grievance two days after the disciplinary hearing complaining, in part, about his placement in disciplinary segregation as a result of DHO Ewing's allegedly improper

1    guilty finding.  (*See* Dkt. 104-3 at 3.)  That grievance was rejected because disciplinary hearings

2    have their own appeal process.  (*Id*.)  Plaintiff also filed an appeal of DHO Ewing's disciplinary

3    decision, and MCC Associate Superintendent Michele Wood affirmed the decision on June 9,

4    2016.[2]  (*See* Dkt. 111-3 at 38-42; Dkt. 106-7 at 2.)

5                        DISCUSSION

6                  Summary Judgment Standard

7           Summary judgment is appropriate when a "movant shows that there is no genuine dispute

8    as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

9    56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party

10   fails to make a sufficient showing on an essential element of his case with respect to which he

11   has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving

12   party bears the initial burden of showing the district court "that there is an absence of evidence to

13   support the nonmoving party's case."  *Id.* at 325.  The moving party can carry its initial burden

14   by producing affirmative evidence that negates an essential element of the nonmovant's case, or

15   by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of

16   persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102

17   (9th Cir. 2000).  The burden then shifts to the nonmoving party to establish a genuine issue of

18   material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The

19   Court must draw all reasonable inferences in favor of the nonmoving party.  *Id*. at 585-87.

20          In supporting a factual position, a party must "cit[e] to particular parts of materials in the

21

22        [2] The disciplinary hearing appeal decision prepared by Associate Superintendent Wood contains at least two typographical errors.  It incorrectly identified the hearing date as May 13, 2016, and it incorrectly identified the

23   violation as #728 rather than #663.  (*See* Dkt. 106-7 at 2.)  However, it is clear from the remainder of the document that Ms. Wood was, in fact, reviewing the proper disciplinary action.  (*See id*.)

record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

<u>Section 1983 Standard</u>

In order to sustain a civil rights action, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated

REPORT AND RECOMMENDATION - 7

1  in causing, the harm alleged in the complaint.  *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir.

2  1981).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a

3  defendant did an affirmative act, participated in another's affirmative act, or omitted to perform

4  an act which he was legally required to do that caused the complained of deprivation.  *Id*. (citing

5  *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Retaliation

7         Plaintiff claims that both defendant Rogers and defendant Ewing retaliated against him

8  based on his good faith participation in the grievance system.  Defendants argue in their

9  summary judgment motion that plaintiff's claims are conclusory and fail to meet the threshold

10  standard to survive summary judgment.  The Ninth Circuit has explained that in order to state a

11  viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion

12  that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

13  protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

14  rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v.*

15  *Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

16         In order to prevail on a retaliation claim, "a plaintiff must show that his protected conduct

17  was the substantial or motivating factor behind the defendant's conduct."  *Brodheim v. Cry*, 584

18  F.3d 1262, 1271 (9th Cir. 2009) (citation and internal quotation omitted).  In addition, a plaintiff

19  "bears the burden of pleading and proving the absence of legitimate correctional goals for the

20  conduct of which he complains."  *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995).  The Court

21  evaluates a retaliation claim in light of the deference accorded prison officials.  *Id*. at 807.

22

23

REPORT AND RECOMMENDATION - 8

1          1.      <u>C/O Rogers</u>

2          Plaintiff asserts in his third amended complaint that defendant Rogers subjected him to

3  repeated pat-searches, and issued him an infraction for attempting to intimidate staff, because of

4  grievances plaintiff had previously filed against defendant Rogers and his co-workers.  (*See* Dkt.

5  82 at 7-10.)  Plaintiff indicates in his pleading that the grievances relevant to his claims against

6  defendant Rogers were filed between April 4, 2016 and May 6, 2016.  (*See id*. at 6-7.)  The

7  evidence in the record demonstrates that during that period of time, plaintiff filed three

8  grievances specifically complaining about the conduct of defendant Rogers.  (*See* Dkt. 104-2 at

9  2-3; Dkt. 111-2 at 17.)  Because of deficiencies in those grievances which plaintiff apparently

10  never corrected, those grievances were not investigated and, thus, defendant Rogers would not

11  have been informed of the complaints by the grievance coordinator.  (Dkt. 104, ¶ 7.)

12          Defendant Rogers confirms in his declaration in support of defendants' summary

13  judgment motion that he was not informed that plaintiff had filed any staff misconduct

14  grievances concerning his behavior towards plaintiff.  (Dkt. 105, ¶ 6.)  The fact that defendant

15  Rogers was apparently unaware of plaintiff's grievances against him undermines plaintiff's

16  claim that those grievances were the motivating factor behind defendant Rogers' repeated pat-

17  searches of plaintiff and/or the infraction issued on May 9, 2016.

18          Plaintiff also fails to demonstrate that defendant Rogers was aware of, or motivated by,

19  grievances filed against his co-workers.  The materials submitted by plaintiff in opposition to

20  defendants' summary judgment motion indicate that plaintiff's grievances against defendant

21  Rogers' co-workers were either rejected outright because plaintiff was over the allotted number

22  of grievances, or were subject to rewrite instructions issued after defendant Rogers infracted

23  plaintiff on May 9, 2016.  (*See* Dkt. 111-2 at 11-16, 19.)  It is therefore unlikely that even the

REPORT AND RECOMMENDATION - 9

employees named in those grievances were aware of plaintiff's complaints, much less defendant Rogers. (*See* Dkt. 104, ¶ 7.) Plaintiff offers nothing, aside from his own speculation, establishing any connection between the submission of those grievances and defendant Rogers' conduct.

Finally, the Court notes that plaintiff not only fails to establish that his grievances were the motivating factor behind defendant Rogers' challenged conduct, he also fails to prove the absence of legitimate correctional goals for that conduct. Performing frequent pat-searches of inmates while monitoring their movements within the facility, and infracting inmates who display threatening or aggressive behavior towards staff, would appear to reasonably advance the well-recognized correctional goals of maintaining institutional security and preserving internal order and discipline. Plaintiff, who bears the burden of proving the absence of legitimate correctional goals, offers no evidence to the contrary. Accordingly, plaintiff's retaliation claim against defendant Rogers fails.

2.    DHO Ewing

Plaintiff asserts that defendant Ewing retaliated against him as well when he found plaintiff guilty of the infraction issued by defendant Rogers on May 9, 2016. The infraction hearing at issue was held on May 12, 2016. (*See* Dkt. 106-5.) Plaintiff's grievances mentioning defendant Ewing were all filed *after* the disciplinary hearing at issue took place. (*See* Dkt. 104-3.) Thus, it cannot be said that plaintiff's grievances against defendant Ewing were the motivating factor behind defendant Ewing's actions at the disciplinary hearing. To the extent plaintiff contends that the disciplinary decision was based on his filing of grievances against other MCC-SOU employees, including defendant Rogers and Mental Health Counselor West, plaintiff's contention is conclusory at best. Plaintiff offers no evidence whatsoever that

REPORT AND RECOMMENDATION - 10

1    defendant Ewing's decision was based on anything but the evidence in the record which amply

2    supported defendant Ewing's guilty finding.  Plaintiff's retaliation claim against defendant

3    Ewing therefore fails as well.

                                            Due Process

4

5        Plaintiff asserts in his third amended complaint that defendant Ewing violated his

6    procedural due process rights at the disciplinary hearing when he denied plaintiff "exculpatory

7    evidence" in the form of video footage of the alleged incident.[3]  (Dkt 82 at 17.)  Plaintiff

8    complains that defendant Ewing, in denying plaintiff access to the video footage, indicated only

9    that there was "a glitch" without explaining what the glitch consisted of.  (*Id*.)

10        An inmate subject to a prison disciplinary hearing is entitled to certain procedural

11    protections including:  (1) advance written notice of the claimed violation; (2) a written

12    statement of the factual findings supporting the disciplinary action; and, (3) the opportunity to

13    call witnesses and present documentary evidence "when permitting him to do so will not be

14    unduly hazardous to institutional safety or correctional goals."  *Wolff v. McDonnell*, 418 U.S.

15    539, 563-66 (1974).

16        The record before this Court makes clear that plaintiff received advance written notice of

17    the infraction and a written statement of the findings supporting defendant Ewing's disciplinary

18    action.  (*See* Dkt. 106-4; Dkt. 106-5; Dkt. 106-6.)  While the record confirms that plaintiff was

19    denied access to the video footage he requested, the record also demonstrates that the denial of

20    this evidence was based solely on the fact that the video footage was unavailable due to technical

21        _____

22        [3] Defendants do not address plaintiff's due process claim in their summary judgment motion, and it is
     admittedly unclear from plaintiff's third amended complaint whether he, in fact, intended to assert a due process
     claim separate and apart from the retaliation claim asserted against defendant Ewing.  However, out of an abundance
23    of caution, and because the evidence in the record is sufficient to permit the Court to evaluate any intended due
     process claim, the Court will address the claim even in the absence of briefing from defendants.

REPORT AND RECOMMENDATION - 11

issues.  (*See* Dkt. 106-2 at 3; Dkt. 106-5; Dkt. 106-6.)  The fact that plaintiff was not offered any explanation of the "glitch" which caused the video to be unavailable does not undermine the validity of the hearing.  It appears from the record that plaintiff was afforded all the process he was due in the disciplinary hearing conducted by defendant Ewing and, thus, his procedural due process claim fails.

<u>CONCLUSION</u>

Based on the foregoing, this Court recommends that defendants' motion for summary judgment be granted, and that plaintiff's third amended complaint and this action be dismissed with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **December 18, 2018**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 21, 2018.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this <u>27th</u> day of November, 2018.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12